UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Katherine Frederick</u>,
     Plaintiff

     v.                            Case No. 14-cv-403-SM
                                   Opinion No. 2015 DNH 187
<u>State of New Hampshire</u>,      (CORRECTED)
<u>New Hampshire Department of</u>
<u>Health and Human Services</u>,
     Defendant

**O R D E R**

The State of New Hampshire, Department of Health and Human Services ("DHHS" or the "Department") briefly employed Katherine Frederick as a child support officer in its Conway, New Hampshire, office. It terminated her employment on grounds that she failed to report to work following expiration of her leave under the Family and Medical Leave Act ("FMLA"). On July 17, 2013, Frederick timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), arguing that her discharge was the result of unlawful discrimination. On July 17, 2014, the EEOC issued a right-to-sue letter. Subsequently, Frederick timely filed this suit, in which she advances both state and federal claims, including workplace discrimination, retaliation, FMLA interference, and wrongful discharge.

DHHS moves to dismiss all of Frederick's claims, asserting, among other things, that the facts, as pled by Frederick, do not allege a cognizable claim for relief, and actually establish that it discharged her for failing to return to work after her leave expired, and not for any unlawful reason. DHHS's motion (document no. 4) is granted.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted). Where, as here, written instruments are provided as exhibits to a pleading, the exhibit "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). See also Trans-Spec Truck Serv. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) (providing that exhibits "attached to the

2

complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)" and that when "a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").  When "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Clorox Co. P.R. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 32 (1st Cir. 2000) (quoting N. Ind. Gun & Outdoor Shows v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998)).

To survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570.  If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm

of mere conjecture, the complaint is open to dismissal."
<u>Tambone</u>, 597 F.3d at 442.

### Background

For purposes of resolving the motion to dismiss, the factual allegations set forth in Frederick's complaint and the attached exhibits (document no. 1) must be taken as true.  The complaint asserts the following.  Frederick became employed as a child support officer in the Conway, New Hampshire, office of DHHS in or around November of 2011.  (Compl. at ¶ 5.)  She was a capable employee and, early in her tenure, Frederick was praised for her job performance.  (<u>Id.</u>)  Frederick was pregnant when hired and was expected to deliver her child in late May of 2012.  (Ex. I at 4.)  She disclosed her pregnancy to her supervisor, Karen Hebert, shortly after starting work at DHHS.  Frederick requested an ergonomic consultation and a chair with better arm and back support due to back pain she was experiencing (as a result of previous shoulder surgery) that was exacerbated by her pregnancy. (<u>Id.</u>)

On or about March 10, 2012, Frederick was diagnosed with gestational diabetes and anemia.  (<u>Id.</u>)  On March 19, 2012, Frederick obtained a letter from her medical provider confirming a need to accommodate her pregnancy-related anemia, which she

faxed to the Human Resources Department at DHHS.  (Ex. A & B.)
Her request for reasonable accommodation included her pregnancy-
related anemia and diabetes, as well as post traumatic stress
disorder and anxiety.  (<u>Id.</u>)  Her medical provider's letter
explained that anemia can cause "extreme fatigue, shortness of
breath and lack of mental clarity," and requested that DHHS work
with Frederick to "modify her work schedule to make the best use
of her time" and to "allow for extended breaks if needed," which
Frederick's medical provider encouraged her to use to get
exercise.  (<u>Id.</u>)

In addition to informing the Human Resources Department of
her pregnancy-related medical conditions, she informed Hebert.
In response to Frederick's report that she was suffering from
pregnancy-related impairments, Hebert "pressured Frederick to
work harder and faster," accused Frederick of "not wanting to be
at work," and stated that she did not know what Frederick's
"actual capabilities were, given that [she] had not worked with
. . . Frederick before [her] pregnancy."  (Compl. at ¶¶ 7-8; Ex.
I at 4.)  On April 11, 2012, Frederick met with the DHHS
Ombudsman, Marie Lang, and the Human Resources Director, Mark
Bussiere, to report what Frederick considered to be Hebert's
discriminatory conduct.  (Compl. at ¶ 9.)

On May 14, 2012, Frederick began a period of FMLA leave due to her pregnancy.  She gave birth about a week later.  (<u>Id.</u> at ¶¶ 10-11; Ex. I at 5.)  For approximately the first four and a half months of his life, Frederick's baby would not accept nutrition from a bottle, so Frederick had to breastfeed him. (Compl. at ¶ 12.)

As of July 16, 2012, Frederick's medical provider approved her return to part-time work, up to four hours per day, five days per week, but specified that Frederick "[m]ay need to take breaks as needed," providing as an example that Frederick could work from 8:00 a.m. to 12:30 p.m. with a 30 minute break, resulting in a four-hour workday.  (Compl. at ¶ 13; Ex. C.)  Frederick needed the 30 minute break to breastfeed her baby.  (Compl. at ¶ 13.) The note also provided that Frederick's anxiety issues should be addressed in a meeting with human resources and the Ombudsman before Frederick returned to work full time.  (Ex. C.)

On or about July 25, 2012, Frederick notified her supervisor, Hebert, that she had been cleared to return to work part-time and was ready to do so.  (Compl. at ¶ 14.)  Hebert told Frederick not to return until July 26 because it would be easier to track her hours.  (Ex. I. at 6.)  Frederick agreed, but nonetheless went to the office to fax the letter clearing her to

return part-time and requesting accommodations to human
resources.  (Id.)  At that time, she spoke with Hebert and
explained that she might need additional break time for lactation
purposes beyond her one 15 minute break, and asked to use that
break time to breastfeed her baby at his daycare facility, which
was only .3 miles from the DHHS office where she worked.  (Compl.
at ¶ 14; Ex. I at 6.)

Upon hearing Frederick's request, Hebert's "posture and
disposition immediately changed."  (Ex. I at 6.)  Hebert told
Frederick that DHHS would not allow her additional break time for
lactation purposes, and that she would not be permitted to use
her break time to leave the premises to breastfeed her baby.
But, Hebert informed Frederick that there was a lactation room
available for her use during her regular break time to pump
breast milk into a bottle for her baby.  (Id. at ¶ 15; Ex. I at
6.)  Frederick explained that because her baby would not take a
bottle, pumping was not an option for her, so she reiterated her
requests to walk the three minutes on her regular break to
breastfeed her baby and for additional break time as needed.
Hebert refused, and told Frederick that she would not be
permitted to leave the premises on her regular break nor would
she receive additional break time for lactation purposes.  (Id.)

7

Later that day, Frederick received a call from human resources indicating that she "could come back to work as long as [she was] able to work the complete 4 hours of work and not leave during this time." (Id. at ¶ 16; Ex. D; Ex. I at 6.) Frederick was also told "that if she could not do this that perhaps [her] other option was to wait until [she] could return full time." (Ex. D.) Frederick responded that her understanding of human resources' response was that "HR and my supervisor are not clearing me to return to work yet, based on my medical needs." (Id.)

A few days later, human resources communicated to Frederick that DHHS would permit her additional breaks to express milk but would not permit her to leave the work premises to breastfeed her baby at his daycare facility, nor would it permit her to arrange for him to be brought to her to breastfeed in the lactation room. (Ex. I at 6.) Frederick says that DHHS put her in an untenable position, forcing her to choose between breastfeeding her baby and her employment. Because her FMLA leave was running out and she would need to return to work by Monday, August 6, 2012, Frederick emailed the DHHS Ombudsman on August 1, 2012, informing her of the problem and seeking her help. (Compl. at ¶ 18; Ex. E.)

On August 3, 2012, Frederick received an email from the
Director of Human Resources stating that the medical information
Frederick had provided was sufficient, and reiterating that
Frederick would be permitted additional break time for lactation
purposes, but would not be permitted to leave the premises to
breastfeed her baby at his nearby daycare facility.  (Compl. at
¶ 19; Ex. F.)

On August 5, Frederick emailed Human Resources and the
Ombudsman, attaching a letter from her medical provider that
explained her need to breastfeed both for her benefit and for the
benefit of her baby.  (Ex. G.)  The letter explained that
Frederick "should breastfeed as much as possible, to ensure
maximum endorphin release to generate feelings of well-being and
to minimize her anxiety disorder."  (Id.)  The letter further
stated, "As her infant does not bottle feed well, breastfeeding
is imperative for her infant's health," especially given his risk
of developing diabetes due to Frederick's gestational diabetes,
and further advised that "[t]wo 15 minute breaks daily and one
hour for lunch may not be considered a reasonable amount of time
for a nursing mother with PTSD and anxiety.  Additional break
time may be needed for lactation purposes."  (Id.)  The letter
also addressed Frederick's return to full-time employment by
stating, "Once [Frederick] has had a two week transition period

of working part time hours, and anxiety issues have been
addressed in the workplace, she will be released to work full
time hours, with additional breaks as needed." (Id.)

DHHS responded on August 6, 2012, stating that Frederick had
been expected to return to work that day, and despite the
documentation from her medical provider, would be expected from
8:00 a.m. to 12:00 p.m. the next day. (Ex. I at 7.) Frederick
was also informed that if she had three unexcused absences after
exhausting her FMLA leave, she could be terminated. (Id.) DHHS
sent another email on August 7, 2012, the day after Frederick's
FMLA leave expired, explaining its position: Frederick was
cleared to return to work four hours per day for two weeks; she
would be provided "reasonable time and facilities for the
expressing of breast milk" (as required by federal law and as
provided by DHHS policy); and, for the first time, DHHS conceded
that Frederick would be "permitted to breast feed [her] child on
breaks in any public area on the grounds" of DHHS.[1] However,

---

[1] Although not mentioned by either of the parties, that
concession was likely in recognition of the breastfeeding
protection provided under New Hampshire law, N.H. Rev. Stat. Ann.
132:10-d: "Breast-feeding a child does not constitute an act of
indecent exposure and to restrict or limit the right of a mother
to breast-feed her child is discriminatory." It is also of note
that the New Hampshire Senate recently passed a bill that would
expand breastfeeding rights in New Hampshire, including a right
to breastfeed in the workplace. See N.H. Senate Bill No. 219, as
amended (Mar. 12, 2015).

10

Frederick would not be permitted to leave the premises during her paid breaks.  (Compl. at ¶ 21; Ex. H.)

   Finding the offer to permit breastfeeding of her child in a public area on the DHHS premises (as required by state law) but in front of DHHS staff and clients unacceptable, Frederick had still not returned to work when she received a letter, on August 21, 2012, notifying her that she was expected to attend a disciplinary hearing on August 23.  The hearing involved a meeting with a DHHS attorney, her supervisor, Hebert, a union grievance representative, and Frederick's then attorney.  The purpose of the hearing was to provide Frederick an opportunity to defend herself and explain her behavior.  (Compl. at ¶ 23; Ex. I at 8.)  At the hearing, Frederick explained that she "was being unfairly discriminated against because [she] was being denied permission to leave the grounds on [her] breaks to breastfeed her [baby], while other DHHS employees were routinely allowed to leave the grounds on their breaks to smoke, exercise, get food, etc."  (Ex. I at 8.)  DHHS explained that it was, and had always been, its policy that employees were not allowed to leave the premises during their breaks.  It acknowledged, however, that the policy had not previously been enforced.  (Id.)

11

At the hearing, Frederick also set out two options that would permit her to return to work.  First, Frederick asked to use the designated lactation room to breastfeed her baby rather than a public space on the DHHS premises.  But, says Frederick, DHHS's attorney responded, "Nope, not gonna happen.  It's just for pumping."[2]  (Compl. at ¶¶ 25-26.)  Frederick also reiterated her request to use reasonably <u>extended</u> breaks during the workday to travel a short distance off the premises, as DHHS allowed other employees to do, in order to breastfeed her baby.  (<u>Id.</u> at ¶ 22 and ¶ 27.)  DHHS refused.  (Ex. I at 8.)  Frederick was given the option of resigning, but she declined.  (<u>Id.</u>)  No agreement was reached and, when she failed to report to work for about seven weeks following expiration of her FMLA leave, Frederick's employment was terminated, by letter dated September 21, 2012.  (Compl. at ¶ 28; Ex. I at 8.)[3]

---

[2] The record is undeveloped at this stage and the allegations are necessarily accepted as true for purposes of ruling on the motion to dismiss.  One must approach renditions of fact in a complaint with caution at this stage, of course, because only one side of a contentious story is presented.  The pleadings, however, do not suggest that the recited facts are far off base.  If the plaintiff's tale is actually true, her proposal was not unreasonable.  And, it would seem that DHHS could have avoided this entire controversy with just a minimal exercise of reasonable administrative judgment, even if the applicable law did not "require" it to act in a cooperative manner.

[3] As it turns out, Frederick would only have needed the breastfeeding accommodation for a few more weeks.  Her child began accepting a bottle in October of 2012.  (Compl. at ¶ 29.)

In August of 2012, Frederick reported her discrimination claims to the New Hampshire Human Rights Commission.  In November, she was informed that her claims had been dismissed. Frederick attempted to file again with the Human Rights Commission, but in March of 2013, the Commission notified her that it declined to reverse its original decision dismissing her claims.  (Ex. I at 9.)  In July of 2013, Frederick timely filed a Charge of Discrimination with the EEOC.  (Ex. I.)  Finding it was "unable to conclude that the information obtained establishes a violation of the statutes," but not certifying "that the respondent is in compliance with the statutes," the EEOC issued a right to sue letter, on July 17, 2014.  (Ex. J.) Frederick then filed this timely suit, in which she alleges violations of Title VII's Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); the Break Time for Nursing Mothers and retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(r) and 215(a)(3); the FMLA's interference provision, 29 U.S.C. § 2615; and New Hampshire's wrongful discharge and whistle blower provisions, N.H. Rev. Stat. Ann. 275-E.

**Discussion**

<u>Title VII</u>

In support of its motion to dismiss, DHHS asserts that Frederick's Title VII discrimination claim "must be dismissed because she has not alleged that she is a member of a protected class" under the statute. (Def.'s Br. at 8.) Accepting the facts as alleged in the complaint and disclosed in the attached exhibits as true, Frederick's Title VII claim cannot survive the defendant's motion to dismiss.

The Pregnancy Discrimination Act of Title VII prohibits discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). To make out a claim of discrimination under the PDA, a plaintiff must allege that (1) she belongs to a protected class; (2) she was the victim of an adverse employment action; (3) she was qualified for her job; and (4) she was treated less favorably than similarly situated co-workers who did not belong to the protected class. <u>See</u> <u>Martinez-Burgos v. Guayama Corp.</u>, 656 F.3d 7, 12 (1st Cir. 2011).

The complaint describes an unfortunate (even deplorable) insensitivity and intransigence on the part of her employer, but it does not plausibly allege, as it must, that Frederick was a

14

member of a protected class.  The protected class she attempts to
describe is somewhat conflated — i.e., one comprised of lactating
employees who desire to breastfeed their children in the
workplace.  As a lactating employee, Frederick does indeed enjoy
legally protected rights, but she suffered no unlawful
discrimination as a member of that class — lactating employees.
As the United States District Court for the District of Colorado
has observed:

> A plaintiff could potentially succeed on a claim if she
> alleged and was able to prove that lactation was a
> medical condition related to pregnancy, and that this
> condition, and not a desire to breastfeed, was the
> reason for the discriminatory action(s) that she
> suffered.

Falk v. City of Glendale, 2012 WL 2390556 (D. Colo.), n.7.  The
PDA precludes employers from treating pregnancy-related
conditions "less favorably than other medical conditions," but
does not require any affirmative accommodations.  Newport News
Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983).
So, for example, "if other coworkers were allowed to take breaks
to use the restroom while lactating mothers were banned from
pumping, discrimination might exist."  Falk, slip op. at 5.

      In this case, however, the complaint itself makes clear that
DHHS did provide Frederick with the same breaks as other
employees.  And, as is consistent with federal law, it also

15

agreed to provide additional breaks as needed, and an appropriate private place in which to express milk.  See 29 U.S.C. § 207(r). Though stingy in spirit, DHHS also permitted Frederick to breastfeed her child during breaks in public spaces (as required by state law).  Accordingly, she was not denied any federal or state right with respect to that described protected class.

What Frederick actually complains about, understandably, is DHHS's inexplicable refusal to accommodate her desire to breastfeed her child, either in the lactation room at work or a short distance away from her workplace, during an extended lactation break period.  This case does not present issues like those that might arise if breastfeeding were allowed in a dangerous workplace (e.g., a chemical plant or construction site), and it is difficult to discern any meaningful difference between a DHHS employee pumping milk on the one hand, or breastfeeding a baby on the other, while on break in a room provided for the very purpose of privately expressing breast milk.  There must have been some reason behind DHHS's resolute refusal to be cooperative in this case, but it is difficult to imagine what it might have been, though the complaint does assert in passing that DHHS was of the general view that breastfeeding in the private lactation room would be "too disruptive."  Compl. at ¶ 26.

But, breastfeeding per se is not (yet) covered by the Pregnancy Discrimination Act and, as noted, the PDA does not require affirmative accommodations.  See e.g., EEOC v. Houston Funding II, Ltd., 717 F.3d 425 (5th Cir. 2013); Vachon v. R.M. Davis, Inc., 2004 WL 1146630 (D. Me. April 13, 2004); Falk v. City of Glendale, 2012 WL 2390556 (D. Colo. June 25, 2012) (collecting cases); Jacobsen v. Regent Assisted Living, Inc., 1999 WL 373790 (D. Or. April 9, 1999).  The complaint also concedes that DHHS acknowledged its state law obligation to allow Frederick to breastfeed her child during her normal break periods, and on work premises, albeit in the public spaces (as provided by the state statute).  The complaint confirms that DHHS provided a private room for lactating employees to express breast milk for later use, as required.  The solution to Frederick's and other breastfeeding mothers' workplace predicament lies, in the first instance, with management and, if necessary, with the New Hampshire General Court, or the Congress.

Because Frederick's desire to breastfeed her child at work, as distinguished from expressing milk at work for later use, did not place her in a protected class, her Title VII discrimination claim necessarily fails.[4]

---

[4] The complaint seems to suggest the outlines of a disparate treatment claim arising from her allegations that other employees were allowed to leave the work premises for various reasons,

Fair Labor Standards Act

In support of her FLSA claim, Frederick alleges that DHHS
had an affirmative obligation under the Break Time for Nursing
Mothers provision to provide her a private place to breastfeed
her baby in the workplace, or at least to grant her reasonable
breaks throughout the work day to breastfeed her baby at his
nearby day care facility.  Indulging all reasonable inferences
arising from the complaint and the attached exhibits in
Frederick's favor, she also alleges that DHHS retaliated against
her for complaining about its breastfeeding policy by summoning
her to a disciplinary hearing and terminating her employment.

The FLSA's Break Time for Nursing Mothers provision states,
in relevant part, that a covered employer must provide "a
reasonable break time for an employee to express breast milk for
her nursing child for 1 year after the child's birth each time
such employee has need to express the milk . . . and a . . .
place, other than a bathroom, that is shielded from view and free
from intrusion from coworkers and the public, which may be used
by an employee to express breast milk."  29 U.S.C.

_____

notwithstanding the DHHS policy against leaving during breaks,
while she was denied a request to leave the premises to
breastfeed her child.  But Frederick sought not only an exception
permitting her to leave, but also an extended break period, so,
even in that respect, the complaint does not allege disparate
treatment of similarly situated employees.

§ 207(r)(1)(A)(B).  Frederick's contention — i.e., that the
statute protects employees who wish to breastfeed their children,
as well as those expressing breast milk by pump or other manual
means — is not supported by the statutory language, pertinent
case law, or other regulations providing broader protection.

In Salz v. Casey's Mktg. Co., No. 11-cv-0355, 2012 WL
2952998 (N.D. Iowa July 19, 2012), a case cited by the plaintiff
in her brief opposing the defendant's motion to dismiss, the
court defined "expressing milk" as follows: "Expressing is when a
mother takes milk from her breast for later use by an infant.  It
can be done by hand or with an electric or manual pump.  It
provides a means for infants to have the benefits of breast milk
even though separated from their mothers."  Id. at *1, n.1.  The
Department of Labor also distinguishes breastfeeding from
expressing milk, which, it has explained, is associated with the
use of a pump and accomplished "while [the mother] is away from
her baby."  See Department of Labor, "Reasonable Break Time for
Nursing Mothers," 75 Fed. Reg. 80073 (Dec. 21, 2010).  And, state
laws that protect breastfeeding, as well as expressing milk,
generally say so explicitly.  See e.g., R.I. Gen. Laws § 23-13.2-
1 (providing break time to employees who need "to breastfeed or
express milk"); Conn. Gen. Stat. § 31-40w (providing that an
"employee may . . . express breast milk or breastfeed on site at

her workplace . . . ."). New Hampshire law does not confer upon employees the right to breastfeed children in the workplace.

Moreover, courts have generally dismissed private causes of action seeking to directly enforce the FLSA's Break Time for Nursing Mothers' provision, both because the existence of a private right of action is not clear, and because employers are not required to compensate employees for time spent expressing milk. Where, as here, Frederick would have been paid during her breaks when expressing milk, she cannot claim (and does not claim) any damages in the only form provided for by the FLSA — lost wages. See 29 U.S.C. § 216(b). See also EEOC v. Vamco Sheet Metals, Inc., No. 13-cv-6088, 2014 WL 2619812 (S.D.N.Y. Mar. 4, 2014).

In summary, the provision upon which Frederick relies does not cover breastfeeding. And, because DHHS complied with the provision's requirements, and because Frederick would have been paid for break times used to express milk, the complaint neither plausibly asserts a violation, nor a claim for any cognizable damages.

In addition to her direct enforcement claim, Frederick alleges that DHHS violated the FLSA's retaliation provision. In

20

order to state a claim under the FLSA's retaliation provision, a plaintiff must plead "that (1) the plaintiff engaged in statutorily protected activity, and (2) [her] employer thereafter subjected [her] to an adverse employment action, (3) as a reprisal for having engaged in the protected activity." See Blackie v. State of Maine, 75 F.3d 716, 722 (1st Cir. 1996). See also 29 U.S.C. § 215(a)(3).

Frederick alleges that she complained to the DHHS Ombudsman by email on August 1, 2012. She reported that her medical provider released her to return to work part-time with accommodations, but that DHHS had not approved her return because she and DHHS were "having problems understanding the lactation law and communicating." (Compl. at ¶ 18; Ex. C; Ex. E.)

Frederick was well within her rights to complain to the Ombudsman about DHHS's policy, and it seems from the complaint that her view that breastfeeding, and not just breast pumping, should be covered under 29 U.S.C. § 207(r) was sincerely held. See generally Bd. of Cnty. Comm'rs v. EEOC, 405 F.3d 840, 852 (10th Cir. 2005). Still, Frederick also pled facts fully supporting DHHS's contention that it complied with the FLSA's provisions, that Frederick's complaint about its breastfeeding policy was without legal merit, and that DHHS terminated her for

excessive absence, and not because she complained about its legally valid breastfeeding policy.

For example, Frederick conceded that DHHS sent her an email on August 6, 2012, the day her FMLA leave expired, informing her that if she "had 3 unexcused absences after exhausting [her] FMLA leave, that [she] could be terminated." (Ex. I at 7.) Furthermore, Frederick conceded in her pleadings that as of August 7, 2012, DHHS expected her to report for work, that she would be permitted reasonable additional break time for lactation purposes, including the use of a private lactation room for expressing breast milk, and that she would be "permitted to breast feed [her] child on breaks in any public area on the grounds" of DHHS, consistent with New Hampshire law, N.H. Rev. Stat. Ann. 132:10-d, and federal law, 29 U.S.C. § 207(r), as explained above. Frederick asserted, however, that those proposed accommodations were "unacceptable" to her, and that she considered it "an affront to [her] dignity" to breastfeed her baby in front of DHHS staff and clients in public areas. (Compl. at ¶ 21.) DHHS did not change its policy, but rather insisted that Frederick comply with the policy, without regard to her complaints to the DHHS Ombudsman. Had she acquiesced, no adverse employment action (termination) would have resulted. The complaint asserts, in general, that DHHS was legally required to

22

accommodate Frederick's desire to breastfeed her child at work,
in the lactation room.  On that point, however, she is incorrect
as a matter of law.

Frederick continued to request additional accommodations for
weeks, yet DHHS did not terminate her employment, even though her
FMLA leave had run out as of August 6, 2012.  As noted above,
when she had not returned to work by August 17, nearly two weeks
after she had exhausted her leave, DHHS invited Frederick to a
disciplinary hearing at which she reiterated her requests for
specific breastfeeding accommodations that DHHS declined to
provide.  Although it was clear that Frederick had decided not to
return to work under the conditions that DHHS offered, DHHS did
not terminate her employment until September 21, 2012, nearly
seven weeks after she had exhausted her FMLA leave.

These facts, as pled by Frederick, and credited as true, are
insufficient to plausibly show that Frederick was summoned for a
disciplinary meeting, or terminated, as a reprisal for having
complained about DHHS's breastfeeding policy.  See Twombly, 550
U.S. at 570; Blackie, 75 F.3d at 722.  The court is sympathetic
to the predicament in which Frederick was put — that is, being
required to choose between breastfeeding her baby when and where
she thought necessary, and returning to work.  Still, from the

23

facts as pled, the court cannot conclude that she has plausibly
alleged that she was terminated because she complained about the
DHHS breastfeeding policy, rather than because she failed to
return to work for seven weeks after exhausting her FMLA leave.
No facts are pled that suggest a plausible causal connection
between her complaint and discharge — except perhaps temporal
proximity, which is not, alone, enough.

DHHS was seemingly (albeit grudgingly) willing to provide
some accommodation, but the complaint itself shows that DHHS took
the position that it would enforce its rules and policies as it
construed them, and that Frederick could either return to work
under those conditions or be discharged for failing to return.
Frederick says she chose not to return absent the accommodations
she requested.  It follows, as described in the complaint, that
her discharge was not in retaliation for invoking what she
sincerely (but incorrectly) thought were her legal rights, but
rather for failing to return to work under the conditions set by
DHHS.  There are no facts pled that plausibly suggest retaliation
— the complaint describes a situation in which Frederick was
plainly free to return to work under the conditions set,
notwithstanding her complaints.  See generally, Torres v.
Cooperativa De Seguros De Vida De P.R., 260 F. Supp. 2d 365, 372-
73 (D.P.R. 2003) (providing that chronic unexcused absences

24

prevent a plaintiff from stating a prima facie case under the PDA and constitute a non-discriminatory reason for termination); Lara-Woodcock v. United Air Lines, Inc., 999 F. Supp. 2d 1027, 1044-46 (N.D. Ill. 2013) (dismissing plaintiff's Title VII claim finding that her employer was entitled to terminate her for unexcused absences, even if related to breastfeeding or pregnancy).

Thus, defendant's motion to dismiss plaintiff's FLSA claim is granted.

Family and Medical Leave Act

The FMLA provides, in pertinent part, that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this chapter." 29 U.S.C. § 2615(a). Frederick alleges that DHHS interfered with her ability to exercise her FMLA leave rights to intermittently breastfeed her baby off DHHS premises. In support of that claim she posits the following hypothetical: Had she been permitted to return from her FMLA leave to work part-time on or about July 25, 2012, with her requested accommodations, she would not have exhausted all twelve weeks of her FMLA leave. Then, she could have invoked available leave time to leave work to breastfeed her baby.

Assuming without deciding that the facts alleged would give rise to an actionable FMLA interference claim, an involuntary-leave claim such as this one "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." Wysong v. Dow Chem. Co., 503 F.3d 441, 449 (6th Cir. 2007); St. Hilaire v. Morgan Stanley Smith Barney, LLC, No. 10-cv-475, 2012 WL 1658389 (D.N.H. May 11, 2012) (providing that as a pre-condition to suit, an employee must have declared an intention to use FMLA leave in the future).  In this case, Frederick does not allege that she ever requested or attempted to use her FMLA leave on an intermittent basis to breastfeed her baby off the premises.  Rather, as she was entitled to do, Frederick used all twelve available weeks of her FMLA leave to remain out of work, and, as the complaint makes clear, she contended that she was entitled to an accommodation to breastfeed her child at work or away from work while on break.  She did not return to work under the conditions set by her employer, and then seek FMLA leave intermittently to breastfeed her child, and DHHS never denied any such request.

For this reason, the defendant's motion to dismiss Frederick's FMLA interference claim is granted.

<u>Wrongful Termination</u>

To state a plausible claim for wrongful termination under New Hampshire law, a plaintiff must allege facts sufficient to establish "(1) that the termination of employment was motivated by bad faith, retaliation or malice; and (2) that she was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn." <u>Lacasse v. Spaulding Youth Ctr.</u>, 154 N.H. 246, 248 (2006) (citation omitted).

Assuming, without deciding, that some cognizable and qualifying public policy has been (or could be) invoked by Frederick, her wrongful discharge claim still fails because, as explained above, the facts as pled in the complaint do not plausibly establish that her termination was motivated by bad faith, retaliation, or malice.  Rather, the facts alleged in the complaint plausibly describe a situation in which DHHS terminated her employment because she failed to return to work for almost seven weeks after she exhausted her FMLA leave.  Frederick is quite clear: She failed to return to work as instructed because DHHS declined to accommodate her desire to breastfeed her child while at work or on an extended break off the workplace premises. An employer's decision not to accommodate an employee's request, when the employer has no legal obligation to do so, is not

27

enough, standing alone, to allege malice or bad faith, as those
terms are understood in New Hampshire's wrongful discharge
jurisprudence.  The complaint alleges nothing more.


     For this reason, the defendant's motion to dismiss
Frederick's wrongful termination claim is granted.


     New Hampshire RSA 275-E

     To state a claim under the New Hampshire Whistleblower Act,
N.H. Rev. Stat. Ann. 275-E:2, a plaintiff must plead facts to
establish that (1) she engaged in an act protected by the
whistleblowers' protection statute; (2) she suffered an
employment action proscribed by the whistleblowers' protection
statute; and (3) there was a causal connection between the
protected act and the proscribed employment action.  See In re
Seacoast Fire Equip. Co., 146 N.H. 605, 608 (2001).


     Again, assuming, without deciding, that Frederick reported
in good faith to the Ombudsman what she had "reasonable cause to
believe is a violation of any law or rule adopted under the laws
of this state, a political subdivision of this state, or the
United States . . .," N.H. Rev. Stat. Ann. 275-E:2, I(a), the
facts as pled in her complaint and as disclosed in the attached
exhibits do not support a plausible claim that a causal

28

connection existed between her August 1 general complaint to the DHHS Ombudsman about the breastfeeding policy and her termination on September 21, 2012. Instead, the well-pled facts support the assertion that Frederick was terminated for failing to return to work, under the conditions set by her employer, for almost seven weeks after she had exhausted her FMLA leave, and that failure was based on DHHS's refusal to accommodate her desire to breastfeed her child at work or away from the work premises while on break.

Consequently, the defendant's motion to dismiss this claim, too, is granted.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 4) is granted, albeit without prejudice to filing an amended complaint within thirty (30) days, if the plaintiff can do so in good faith, that asserts facts sufficient to support any cause of action advanced in the amended complaint. The complaint is drafted in a narrative style that presupposes a legally protected right to breastfeed one's child in the workplace, or at least a right to extended work breaks to facilitate breastfeeding away from the workplace. There appears to be no authority for such an assumption and counsel has cited

none.  Perhaps facts can be pled that might support a cause of action under these circumstances, but that remains to be seen.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

September 30, 2015

cc:  Benjamin T. King, Esq.
     Elizabeth A. Lahey, Esq.
     Lisa M. English, Esq.