UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Katherine Frederick,
      Plaintiff

      v.                          Case No. 14-cv-403-SM
                                  Opinion No. 2016 DNH 139
State of New Hampshire,
New Hampshire Department of Health
And Human Services,
      Defendant

**O R D E R**

Katherine Frederick was employed by the State of New Hampshire, Department of Health and Human Services ("DHHS" or the "Department") as a child support officer in its Conway, New Hampshire, office.  DHHS terminated her employment on September 21, 2012.  Frederick subsequently filed this suit, advancing state and federal claims, including claims asserting Title VII (Pregnancy Discrimination Act) violations, retaliation, FMLA interference, and wrongful discharge.  DHHS moved to dismiss all of Frederick's claims, and, on September 30, 2015, the court granted DHHS's motion, without prejudice to Frederick's filing an amended complaint.

On November 13, 2015, Frederick filed an amended complaint, in which she asserts federal claims under Title VII (for gender discrimination) and the Americans with Disabilities Act ("ADA"),

1

as well as a claim for wrongful discharge under state law.   DHHS
again moves to dismiss Frederick's claims.[1]   DHHS's motion is
denied in part, and granted in part.

### Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the court must "accept as true all well-pleaded facts
set out in the complaint and indulge all reasonable inferences
in favor of the pleader."   SEC v. Tambone, 597 F.3d 436, 441
(1st Cir. 2010).   Although the complaint need only contain "a
short and plain statement of the claim showing that the pleader
is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege
each of the essential elements of a viable cause of action and

---

[1]   DHHS moves to dismiss pursuant to Federal Rule 12(b)(1)
(document no. 18), presumably based on its assertion that
Frederick's claims are barred as untimely and because she failed
to exhaust her administrative remedies.   However, DHHS's motion
is properly considered under Federal Rule 12(b)(6), rather than
Rule 12(b)(1). See Bergstrom v. Univ. of New Hampshire, 959 F.
Supp. 56, 58 (D.N.H. 1996) ("As an initial matter, the
requirement that a Title VII plaintiff timely file a charge with
the EEOC prior to litigating in federal court is not
jurisdictional but, rather, more analogous to a statute of
limitations. Accordingly, the instant motion is properly treated
as one alleging the failure to state a claim upon which relief
can be granted under Rule 12(b)(6) and not as a motion attacking
the court's jurisdictional capacity under Rule 12(b)(1).")
(internal citations omitted); see also Hecking v. Barger, No.
CIV. 1:08-CV-490-JL, 2010 WL 653553, at *1, n. 4 (D.N.H. Feb.
23, 2010) ("The argument that a claim is barred by the statute
of limitations raises an affirmative defense (not a
jurisdictional defect), and it may be considered under Federal
Rule 12(b)(6).") (citations omitted).

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).  Where, as here, written instruments are provided as exhibits to a pleading, the exhibit "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).  See also Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (providing that exhibits "attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)" and that when "a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").  When "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Clorox Co. P.R. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 32 (1st Cir. 2000) (quoting N. Ind. Gun & Outdoor Shows v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998)).

To survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation
omitted).  Instead, the facts alleged in the complaint must, if
credited as true, be sufficient to "nudge[] [plaintiff's] claims
across the line from conceivable to plausible."  Id. at 570.
If, however, the "factual allegations in the complaint are too
meager, vague, or conclusory to remove the possibility of relief
from the realm of mere conjecture, the complaint is open to
dismissal."  Tambone, 597 F.3d at 442.

### Factual Background

For purposes of resolving the motion to dismiss, the
factual allegations set forth in Frederick's complaint and the
attached exhibits must be taken as true.  The facts asserted by
Frederick in her amended complaint are substantially similar to
those alleged in her original complaint and summarized by the
court in its September 2015 order.

Frederick asserts that she became employed as a child
support officer in the Conway, New Hampshire, office of DHHS in
or around November of 2011.  Compl. at ¶ 6.  Her job performance
led to an increase in collected child support arrearages, for
which she was praised.  Id. at ¶¶ 6, 12.  Frederick was
pregnant when hired; she was due to deliver her child in late

May of 2012.  Compl., Exhibit A at p. 5.  During her pregnancy,
Frederick discussed breastfeeding with her supervisor, Karen
Hebert.  Compl. ¶ 8.  When Frederick mentioned her intent to
breastfeed her child, Hebert replied that she had tried
breastfeeding, and then wrinkled her face "in disgust."  Id.

Early in March of 2012, Frederick was diagnosed with
gestational diabetes and anemia.  Compl. at ¶ 9.  She was
required to test her blood sugar multiple times each day, self-
administer insulin injections, and to exercise following meals
to help regulate her blood sugar levels.  Id.  On March 19,
2012, Frederick obtained a letter from her medical provider
confirming a need to accommodate her pregnancy-related anemia.
She faxed the letter to DHHS's Human Resources Department.
Compl. at ¶¶ 10-11.  She requested accommodations for her
pregnancy-related anemia and diabetes, as well as for post-
traumatic stress disorder and anxiety, which, she alleges,
"substantially limited her in major life activities such as
thinking and concentrating."  Compl. at ¶ 9; Exhibit A at p. 5.
Frederick's medical provider explained that anemia can cause
"extreme fatigue, shortness of breath and lack of mental
clarity," and requested that DHHS work with Frederick to "modify
her work schedule in order to make the best use of her time" and
to "allow for extended breaks if needed."  Id. at ¶ 10.

In addition to informing the Human Resources Department of her pregnancy-related medical conditions, Frederick informed Hebert, her supervisor. Compl. at ¶ 11.  Frederick alleges that, in response, Hebert "pressured [her] to work harder and faster," accused her of "not wanting to be at work," and stated that she did not know what Frederick's "actual capabilities were, given that [she] had not worked with . . . Frederick before [her] pregnancy."  Compl. at ¶ 12.

On April 11, 2012, Frederick met with the DHHS Ombudsman, Marie Lang, and the Human Resources Director, Mark Bussiere, to report what Frederick considered to be Hebert's discriminatory conduct.  Compl. at ¶ 13.  Frederick contends that accommodations proposed as a result of that meeting failed to adequately account for her disabling PTSD and anxiety.  Id.  She returned the proposed accommodations to Lang with edits.  Id. Lang, however, failed to respond to Frederick's proposed revisions.  Id.

On May 14, 2012, Frederick began a period of FMLA leave, due to her pregnancy.  Compl. at ¶ 14.  Prior to taking leave, Frederick asked to meet with Lang and Bussiere upon her return, to discuss her request for accommodations related to her PTSD and anxiety conditions.  Id. at ¶ 15.  Frederick gave birth to a boy on May 22, 2012.  Id. at ¶ 16.

6

Because Frederick suffered from gestational diabetes during her pregnancy, her son had a heightened risk of developing diabetes.  Compl. at ¶ 17.  Her medical providers told Frederick that breastfeeding her son would reduce that risk.  Id.  Her health care providers also advised that breastfeeding would improve her own PTSD and anxiety symptoms because, as they explained, breastfeeding results in a hormonal release of oxycotin and prolactin, which ameliorate symptoms of anxiety. Id.  Finally, they advised that, given Frederick's anxiety and PTSD conditions, she had a heightened risk of developing post-partum depression, and breastfeeding could reduce that risk as well.  Id.

For approximately the first four and a half months of his life, Frederick's baby would not accept nutrition from a bottle, and would only breastfeed.  Compl. at ¶ 18. Frederick and her husband spoke to a lactation consultant and tried specialized bottles and a breast pump, but the baby would only be fed from the breast.  Id.

In or around July 2012, Frederick's medical provider approved her return to part-time work, up to four hours per day, five days per week, but specified that Frederick might need to take a half-hour break.  Compl. at ¶ 19.  Specifically, she noted that Frederick could work from 8:00 a.m. to 12:30 p.m.

7

with a 30-minute break, resulting in a four-hour workday.  Id.
Frederick needed the 30-minute break to breastfeed her baby.
Id.

On or about July 25, 2012, Frederick notified Hebert that
she had been medically cleared to return to work part-time and
was ready to do so.  Compl. at ¶ 20.  She advised Hebert that
she would require additional break time to breastfeed her son as
an accommodation due to his refusal to take a bottle and to
address her anxiety and PTSD conditions.  Id.  She asked to use
that break time to breastfeed her baby at his daycare facility,
which was located three-tenths of a mile from the DHHS office
where she worked.  Id.

Hebert responded that DHHS would not provide Frederick
additional break time for lactation purposes, and that she would
not be permitted to use her break time to leave the work
premises to breastfeed her baby.  Compl. at ¶ 21.  But, Hebert
informed Frederick that a lactation room was available for her
use, during her regular break time, to pump breast milk into a
bottle for her baby.  Id. at ¶ 21; Exhibit A at p. 7.  Frederick
explained that, because her baby would not take a bottle, and
because of her own medical conditions, pumping was not an option
for her.  Compl. at ¶ 21.  Hebert, however, remained firm,
telling Frederick that she would not be permitted to leave the

premises on her regular break nor would she receive additional break time for lactation purposes.  Id.

Soon after, Frederick received a call from Human Resources indicating that she "could only return to work if she '[was] able to work the complete 4 hours of work and not leave during this time.'"  Id. at ¶ 22.  Frederick felt she could not return to work under those conditions, which "placed [her] in an untenable position, forcing her to choose between her employment on one hand, and the nutritional needs of her child and the counsel of her health care providers on the other hand."  Id. at ¶ 23.

Frederick emailed the State Ombudsman on August 1, 2012, noting that her FMLA leave expired on Friday, August 3, 2012, and that she needed to return to work the following Monday, August 6, 2012.  Compl. at ¶ 24.  She noted that she had been released by her medical provider to work part-time, but DHHS had not approved.  She asked for a meeting to discuss and resolve the issue.  Id.

On August 3, 2012, Human Resources told Frederick that DHHS would permit her additional breaks to express milk, but would not permit her to leave the work premises to breastfeed her baby at his daycare facility, nor would it permit her to arrange for

her son to be brought to her so that she could breastfeed in any appropriate private place on DHHS premises.  Compl. ¶¶ 25, 27.

On August 5, 2012, Frederick emailed Human Resources and the Ombudsman, attaching a letter from her medical provider that explained her need to breastfeed.  Compl. ¶ 26.  DHHS responded on August 6, 2012, stating that Frederick had been expected to return to work that day, and despite the documentation from her medical provider, would be expected from 8:00 a.m. to 12:00 p.m. the next day.  Compl., Exhibit A at p. 8.  Frederick was also informed that if she had three unexcused absences after exhausting her FMLA leave, she could be terminated.  Id.

DHHS sent another email on August 7, 2012, the day after Frederick's FMLA leave expired, in which it conceded that Frederick would be permitted to breastfeed her child on breaks "in any public area on the grounds" of DHHS (as allowed by state law).  Compl., Exhibit A at p. 8; see also Compl. ¶ 27. However, DHHS would not permit Frederick to nurse her son in the privacy of DHHS's lactation room, or leave the premises during her paid breaks.  Compl., Exhibit A at p. 8.  Frederick found DHHS's intransigence particularly frustrating because other DHHS employees frequently traveled offsite during the workday for such purposes as medical and hair appointments, and to attend exercise classes.  Compl. at ¶ 25.

10

DHHS's suggestion that she breastfeed her son in DHHS's public areas was not acceptable to Frederick.  Compl. at ¶ 27. She felt the suggestion, which would have required her to breastfeed in front of DHHS staff and clients, "needlessly compromised her dignity" and "endangered her safety," especially because "a violent and dangerous individual who lived in the neighborhood of the workplace had stalked" her, requiring her to obtain a restraining order.  Compl. at ¶ 27.  Accordingly, Frederick had still not returned to work when she received a letter, on August 21, 2012, notifying her that she was expected to attend a disciplinary hearing on August 23.  Compl. at ¶ 29, Exhibit A at p. 9.

At the hearing, Hebert explained that its purpose was to provide Frederick an opportunity to defend herself and explain her conduct.  Compl. ¶ 30.  Frederick set out two options that would permit her to return to work.  First, Frederick asked to use the designated lactation room to breastfeed her baby rather than a public space on the DHHS premises.  But, says Frederick, DHHS's attorney responded, "Nope, not gonna happen.  It's just for pumping."  Compl. at ¶ 32.  Frederick then reiterated her request to use reasonably extended breaks during the workday to travel a short distance off the premises, as DHHS allowed other

employees to do, in order to breastfeed her baby.  <u>Id</u>. at ¶ 33.
DHHS refused.  <u>Id</u>.

No agreement was reached and, after Frederick failed to
report to work for about seven weeks following expiration of her
FMLA leave, her employment was terminated by letter dated
September 21, 2012.  Compl. at ¶ 35.

### Procedural Background

In July of 2013, Frederick timely filed a Charge of
Discrimination with the EEOC.  Compl. ¶ 36.  The EEOC issued a
right to sue letter on July 17, 2014.  Compl. ¶ 37.

As discussed above, on September 21, 2014, Frederick timely
filed her initial complaint, alleging violations of Title VII's
Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); the
Break Time for Nursing Mothers and retaliation provisions of the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(r) and
215(a)(3); the FMLA's interference provision, 29 U.S.C. § 2615;
and New Hampshire's wrongful discharge and whistle blower
statutes, N.H. Rev. Stat. Ann. 275-E.  DHHS moved to dismiss
Frederick's complaint, arguing, <u>inter alia</u>, that she failed to
state a claim for relief, since the facts, as pled, established
that Frederick was discharged for failing to return to work
after her leave expired, and not for any unlawful reason.  On

12

September 30, 2015, the court granted DHHS's motion, but allowed
Frederick leave to file an amended complaint.

On November 11, 2015, Frederick filed an amended complaint.
She now alleges violations of the Americans with Disabilities
Act, based on DHHS's purported failure to accommodate her own
disabilities, and her son's "disabling impairment substantially
limiting his ability to take nutrition,"[2] and Title VII, based on
DHHS's discrimination against her as member of a subclass of
women "with infants who cannot take nutrition from a bottle but
instead must breastfeed," as well as a wrongful discharge claim
under New Hampshire law.

DHHS again moves to dismiss, asserting that Frederick has
failed to exhaust her administrative remedies and failed to
comply with the applicable statutes of limitation.  DHHS also
asserts that the facts as pled by Frederick do not allege
cognizable claims for relief.

---

[2]     Frederick has since acknowledged that a plaintiff in an
associational disability discrimination claim is not entitled to
reasonable accommodation, and agrees that her ADA claim should
be dismissed to the extent it alleges associational disability
discrimination. See Pl.'s Mem. in Supp. of Obj. to Mot. to
Dismiss at pp. 1-2.

## Discussion

### Failure to Exhaust Administrative Remedies

DHHS first argues that Frederick's ADA claim must be dismissed because she failed to raise that theory of liability in her EEOC charge. "[I]t is well-settled that an employee alleging discrimination must file an administrative claim with the EEOC or with a parallel state agency before a civil action may be brought." Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009). The submission "serves several purposes. Most importantly, it gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation." Id. "'The scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge.'" Id. (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)). But, on the other hand,

> it has been clearly established by this Circuit that "[a]n administrative charge is not a blueprint for the litigation to follow. . . . Thus, "the exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow.'" Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir. 1971) (quoting Sanchez [v. Standard Brands, Inc.], 431 F.2d [455] at 466 [5th Cir. 1970]). Rather, the critical question is whether the claims set forth in the civil complaint come within the "scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination."  Sanchez, 431 F.2d at 466.

Fantini v. Salem State College, 557 F.3d 22, 27 (1st Cir. 2009) (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38-39 (1st Cir. 1990) (internal citations omitted).

Frederick's ADA claim falls within the scope of her EEOC charge.  As Frederick points out, in the form charge itself, she checked that DHHS had discriminated against her based on "sex," "retaliation," and "disability."  Exhibit A at p. 2 (emphasis added).  The charge also repeatedly refers to Frederick's requests for an accommodation relating to her PTSD and anxiety conditions.  See, e.g., id. at pp. 4, 5, 6, 7, 9.  Finally, she responded to the question, "Why [do] you believe you were discriminated against[?]," by writing, "I believe I was discriminated against on the basis of my disabilities: PTSD, anxiety and pregnancy-related disabilities."  Id. at p. 11 (emphasis added).  She then went on to cite not only the ADA itself, but case precedent interpreting the ADA's requirements. Id.  Frederick's asserted ADA claim could, thus, reasonably be expected to grow out of the allegations set forth in her EEOC charge.

**Whether Frederick's Claims are Time-Barred**

Next, DHHS argues that Frederick's ADA and Title VII claims are time-barred, because she failed to file suit within 90-days of receiving her right-to-sue letter.[3]

A party asserting a claim under the ADA or Title VII must file a complaint within 90-days of receiving a right-to-sue letter.  42 U.S.C. § 2000e-5(f).  Frederick received her right-to-sue letter on July 17, 2014.  See Document No. 1, Exhibit J; Compl. ¶ 37.  Her original complaint, in which she asserted, inter alia, a claim under Title VII and a wrongful discharge

---

[3]    DHHS's argument with respect to the timeliness of Frederick's wrongful discharge claim is not entirely clear. DHHS does not argue that Frederick's wrongful termination claim is untimely because it fails to relate back to her original complaint.  It argues, instead, that Frederick's wrongful discharge claim is untimely because she failed to assert it within three years of the date on which she was terminated, citing precedent for the proposition that, when a suit is dismissed without prejudice, it is treated for statute of limitations purposes as if it had never been filed. See Def.'s Mem. in Supp. of Mot. to Dismiss at pp. 8-9 (citing Lee v. Cook County, 635 F.3d 969, 972 (7th Cir. 2011)).  However, such precedent is not applicable when, as here, the suit was not formally dismissed, but rather a motion to dismiss was granted subject to plaintiff having been granted leave to file an amended complaint.  See, e.g., Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1022 (7th Cir. 2013) ("If a timely complaint is dismissed but the action remains pending, as occurred here, an amended complaint relates back to the filing of the original complaint when 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading....'.") (quoting Fed. R. Civ. P. 15(c)(1)(B)).

claim, was timely filed on September 21, 2014.  Frederick argues that both claims in her amended complaint fall squarely within Federal Rule of Civil Procedure 15(c)'s relation back doctrine, because her amended complaint "merely bolsters and supplements" her original claims and allegations.  Pl.'s Mem. in Supp. of Obj. to Mot. to Dismiss at p. 7.  Similarly, Frederick argues, her ADA claim is not untimely because that claim also relates back to the date of her original, timely-filed complaint.

DHHS thinks that Rule 15's "relation back" doctrine does not apply, because the deadline for amending the complaint set by the scheduling order in this case expired before she filed.  It is Rule 16(b)'s "good cause" standard that should apply, DHHS argues.  But, DHHS's argument overlooks the fact that the court granted Frederick leave to amend her complaint.  Accordingly, the pertinent question is whether her ADA and Title VII claims relate back under Civil Rule 15(c).

Rule 15(c) provides that an amended pleading "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Interpreting Rule 15 in Mayle v. Felix, 545 U.S. 644, 664 (2005), the Supreme Court noted that: "[s]o long as the original and amended

17

petitions state claims that are tied to a common core of operative facts, relation back will be in order." Accordingly, courts should determine whether "'the alteration of the original statement is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim.'" Iconics, Inc. v. Massaro, No. CV 11-11526-DPW, 2016 WL 199407, at *5 (D. Mass. Jan. 15, 2016) (quoting 6A Wright, Miller & Kane, Federal Practice and Procedure § 1497 (2d ed. 1990)). "This analysis 'is directed to conduct rather than causes of action,' and new legal theories may relate back to the original filing where . . . there is a shared basis in factual circumstances." Id. (quoting Zee-Bar, Inc. v. Kaplan, 162 F.R.D. 422, 426 (D.N.H. 1993)).

With respect to Frederick's Title VII claim, the analysis is fairly straightforward. Frederick's original and amended Title VII claims plainly arose out of the same "core of operative facts," Mayle, 545 U.S. at 664, i.e, DHHS's refusal to accommodate Frederick's request to either privately breastfeed her son at DHHS's offices, or be allowed to leave DHHS's offices to breastfeed at his nearby day care facility.

Whether Frederick's ADA claim relates back is a bit more complicated. "The addition of new claims to an amended pleading

does not alone defeat relation back; the question instead is
whether the initial pleading provided a defendant with adequate
notice of the potential new claims." Quaak v. Dexia, S.A., 445
F. Supp. 2d 130, 137 (D. Mass. 2006).  Following Frederick's
EEOC charge and the filing of her original complaint, DHHS was
on notice that Frederick was asserting legal claims arising out
of a particular set of factual circumstances, including
assertions that DHHS discriminated against her based upon her
anxiety and PTSD conditions.  Her ADA claim arises out of those
very circumstances, and so relates back.  See Zee-Bar, 162
F.R.D. at 426 ("As long as conduct is placed in issue in the
complaint, a proposed amendment applying a new legal theory to
the identified conduct should ordinarily be permitted to relate
back to the original complaint.").

Frederick's original complaint also referenced her EEOC
charge.  The EEOC charge, which was attached as an exhibit,
accused DHHS of failing to comply with the ADA.  A letter from
Frederick's health care provider was also attached to the
original complaint, a letter that Frederick had earlier provided
to DHHS, which states:

> [Frederick] should only rely on bottle feeding and
> using a breast pump occasionally.  Katherine should
> breastfeed as much as possible, to ensure maximum
> endorphin release to generate feelings of well-being
> and to minimize anxiety disorder, as well as to

19

> maintain her milk supply and to fight her infant's
> risk of diabetes, resulting from Kate's gestational
> diabetes.

Document No. 1, Exhibit 7, at p. 2. It cannot reasonably be said, then, that DHHS was not "given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim." Iconics, Inc. v. Massaro, 2016 WL 199407, at *5. Finally, DHHS does not assert that it will be at prejudiced in defending against Frederick's ADA claim.

For these reasons, the court finds that Frederick's ADA claim relates back to her original complaint and is not time-barred.

**Failure to State a Claim**

*ADA Claim*

DHHS contends that Frederick has not stated an ADA claim because she has not sufficiently alleged that she requested a reasonable accommodation from DDHS for her disability. According to DHHS, Frederick did not allege in either her original complaint or EEOC charge that she requested to breastfeed her son as an accommodation for her anxiety or PTSD disability. Therefore, DHHS says, Frederick's allegation in her amended complaint that she requested to breastfeed as an accommodation for her anxiety or PTSD disability is inconsistent

with her prior pleadings and the documents referenced therein,
and cannot be taken as true for purposes of ruling on the motion
to dismiss.

On a motion to dismiss for failure to state a claim, the
plaintiff's "well-pleaded factual allegations contained in the
complaint" are assumed to be true.  San Geronimo Caribe Project,
Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012)
(internal quotations omitted) (citation omitted).  Frederick's
amended complaint alleges that she requested an accommodation
from DHHS with respect to her anxiety and PTSD conditions.  See
Compl. at ¶ 20.  Whether Frederick can prove that she requested
an accommodation for her anxiety and PTSD conditions is a matter
for resolution at a different stage of the proceedings.  For
current purposes, the assertion is presumed to be true.

Accordingly, DHHS's motion to dismiss Frederick's ADA claim
is denied.

*Title VII "Sex Plus" Claim*

Title VII of the Civil Rights Act prohibits employers from
discriminating against employees based on sex with respect to
"compensation, terms, conditions or privileges of employment."
42 U.S.C. § 2000e-2(a).  Frederick purports to allege a "sex
plus" claim, which "refers to the situation where an employer

classifies employees on the basis of sex <u>plus</u> another characteristic." <u>Chadwick v. Wellpoint, Inc.</u>, 561 F.3d 38, 43 (1st Cir. 2009) (emphasis in original) (internal quotations omitted).  As our circuit court of appeals has explained, "[t]he terminology may be a bit misleading . . .  because the 'plus' does not mean that more than simple sex discrimination must be alleged; rather, it describes the case where not all members of a disfavored class are discriminated against." <u>Id</u>. (internal quotations omitted).

Frederick purports to be a member of a subclass consisting of "women with infants who cannot take nutrition from bottles but instead must breastfeed."  Compl. at ¶ 50.  DHHS violated Title VII, she says, by treating her less favorably than employees who were not in that subclass.  Frederick alleges that she was treated differently than: (1) breastfeeding mothers whose children would drink breastmilk from a bottle (who were permitted to pump breastmilk privately at DHHS); and (2) other DHHS employees, who were allowed to leave the office during the work day on their breaks for a variety of personal reasons. Compl. at ¶ 53.

With respect to Frederick's allegation that she was treated differently than DHHS employees "allowed" to leave the premises during the work day, as the court noted in its order on DHHS's

first motion to dismiss, the facts, as alleged, simply do not give rise to a disparate treatment claim.  Frederick offers nothing new of substance, and what she realleges does not support her assertion that other DHHS employees were "allowed" to leave the premises, while she was not.

When Frederick sought permission to routinely leave the work premises on an extended break period to breastfeed her child, she was seeking an exception to a DHHS policy that required all employees to remain on the premises – employees were not allowed to leave during breaks.[4]  Critically, she fails to allege that other DHHS employees either: (1) were routinely permitted to leave for an extended period of time; or (2) were seeking and receiving permission from DHHS to leave the premises, while she was refused permission.  Frederick's amended

_____

[4] In her EEOC charge, Frederick writes:

> I asked why other[] [employees] were allowed to leave the premises to go on walks during their breaks, [and] was told that the policy had always been that employees were not allowed to leave the premises during their breaks, but it had not been enforced.  I was informed that DHHS-Conway was now choosing to enforce the policy.

Compl. Exhibit A at p. 9 (emphasis in original).

complaint does not plausibly allege disparate treatment of similarly situated employees.

As for Frederick's allegations concerning disparate treatment as compared to lactating female employees who were not medically required to exclusively breastfeed, Frederick has not adequately alleged that DHHS treated her differently "at least in part" because of her sex.  Chadwick, 561 F.3d at 43. Frederick alleges that she was treated unfavorably as compared to a corresponding subclass of women: women who were not required to exclusively breastfeed their infants.  The "simple test" of Title VII discrimination, articulated by the Supreme Court in Los Angeles Department of Water & Power v. Manhart, 435 U.S. 702, 711 (1978), is whether an employer has treated an employee "in a manner which but for that person's sex would be different."  Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C., 462 U.S. 669, 683 (1983).

In other words, "regardless of the label given to the claim, the simple question posed by sex discrimination suits is whether the employer took an adverse employment action at least in part because of an employee's sex."  Chadwick, 561 F.3d at 43.  Therefore, "gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender. Such plaintiffs cannot make the requisite showing that

they were treated differently from similarly situated members of the opposite gender." Coleman v. B-G Maintenance Management, 108 F.3d 1199, 1204 (10th Cir. 1997); see also Rolfs v. Home Depot U.S.A., Inc., 971 F. Supp. 2d 197, 212 (D.N.H. 2013) ("although the protected class need not include all women, the plaintiff must still prove that the subclass of women was unfavorably treated as compared to the corresponding subclass of men."); King v. Ferguson Enterprises, Inc., 971 F. Supp. 2d 1200, 1215 (N.D. Ga. 2013), aff'd, 568 Fed. Appx. 686 (11th Cir. 2014) ("if a woman cannot show that her employer treats the same subclass of men differently, then gender is not a factor; moreover, allowing her claim without such evidence would result in the protection of the characteristic rather than gender.").[5]

---

[5]     The court is not persuaded that the Court of Appeals for the First Circuit held otherwise in Chadwick, 561 F.3d 38, 48, as the court supported its determination in that case by stating:

> Given the common stereotype about the job performance of women with children and given the surrounding circumstantial evidence presented by Chadwick, we believe that a reasonable jury could find that WellPoint would not have denied a promotion to a similarly qualified man because he had "too much on his plate" and would be "overwhelmed" by the new job, given "the kids" and his schooling.

Id. (emphasis added).

Given that precedent, Frederick's allegations that she was treated differently from other lactating women – women whose children would drink breastmilk from bottles and who were allowed to pump in private – do not give rise to a Title VII claim.  She has not alleged that her subclass of women was unfavorably treated as compared to a corresponding subclass of men.[6]  "The drawing of distinctions among persons of one gender on the basis of criteria that are immaterial to the other, while in given cases perhaps deplorable, is not the sort of behavior covered by Title VII."  Martinez v. N.B.C., Inc., 49 F. Supp. 2d 305, 309 (S.D.N.Y. 1999).

DHHS's actions may well have been arbitrary and unfair.  But, "federal law does not protect generally against arbitrary or unfair treatment in private employment, but only against actions motivated by listed prejudice such as race, age and gender.  Discrimination is a form of unfairness, but not all unfairness is discrimination."  Sabinson v. Trustees of Dartmouth College, 542 F.3d 1, 4 (1st Cir. 2008) (emphasis

---

[6]     To the extent Frederick argues that she states a Title VII claim because "only women breastfeed" (pl.'s mem. in supp. of opp. to mot. to dismiss at p. 9), that argument fails because Frederick does not allege that she has been singled out based on her breastfeeding status, but instead based on her inability to bottle-feed her son.

added) (internal citations omitted). For these reasons,
Frederick has not sufficiently stated a Title VII claim.

*Wrongful Discharge Claim*

In order to state a common law claim for wrongful
termination, "a plaintiff must allege facts sufficient to
establish '(1) that the termination of employment was motivated
by bad faith, retaliation or malice; and (2) that she was
terminated for performing an act that public policy would
encourage or for refusing to do something that public policy
would condemn." Document No. 14, at p. 27 (citing <u>Lacasse v.
Spaulding Youth Ctr</u>., 154 N.H. 246, 248 (2006) (further citation
omitted)). DHHS focuses on the first element of the two-pronged
test, arguing that Frederick's wrongful discharge claim must be
dismissed because she has not sufficiently alleged that she was
terminated out of bad faith, malice or retaliation. Relying on
the court's September 2015 order in this action, DHHS argues
that the amended complaint's allegations establish that
Frederick was terminated because she failed to return to work
after exhausting her FMLA leave.

In support of her wrongful discharge claim, Frederick now
alleges that DHHS refused to provide an accommodation to which
she was legally entitled, and without which she could not return
to work. <u>See</u>, e.g., Compl. at ¶ 20, 27, 39, 41, 42, 45. When

she did not return to work, DHHS fired her.  See Compl. ¶¶ 23,
25 and Exhibit A at p. 8 ("I certainly wanted to return to work,
I was not given reasonable accommodations that allowed me to do
so.").  Frederick further alleges that DHHS's refusal to grant
her request for accommodation and her subsequent termination
were motivated by bad faith and malice.  Beyond that, however,
Frederick offers scant factual support for a finding of malice,
bad faith or retaliation.

But, accepting Frederick's allegations as true – as the
court must at this stage — and drawing all reasonable inferences
therefrom in her favor, Frederick's wrongful discharge claim is
at least minimally sufficient to survive DHHS's motion to
dismiss, in that, the complaint describes her entitlement to
reasonable accommodations related to her own disabilities (PTSD
and anxiety), vaguely suggests that public policy would
encourage her not to return to work absent accommodations to
which she was legally entitled, and that DHHS fired her in fact
because she insisted on returning only if her disabilities were
accommodated, which she implies constitutes bad faith and
retaliation.  The court's determination takes into account the
early stage of this litigation, as well as both parties' failure
to meaningfully brief whether the facts as alleged could, as a
matter of law, give rise to a plausible inference of bad faith,

28

malice, or retaliation.  While the claim may not survive dispositive motions practice, the prudent course is to await an adequately developed record before considering the identified substantive legal issues.

### Conclusion

For the foregoing reasons, as well as those set forth in DHHS's memoranda (documents no. 18-1 and 22), DHHS's motion to dismiss (document no. 18) count two of the first amended complaint is **GRANTED**.  DHHS's motion to dismiss counts one and three of the first amended complaint is **DENIED**.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

August 16, 2016

cc:  Benjamin T. King, Esq.
     Elizabeth A. Lahy, Esq.
     Lisa M. English, Esq.